Byzantine Zipper All right, is the appellant ready to proceed? Yes. You may. May it please the court, Elizabeth Lee Thompson on behalf of Asphalt Zipper, Inc. This appeal involves a surprise, prejudicial, and improper maneuver in the midst of trial that denied Appellant Asphalt Zipper its substantial statutory right to have the trier of fact allocate responsibility among all parties that contributed or caused to contribute the alleged harm to plaintiff. This blindsiding maneuver and resulting lack of submission of the responsible third party skewed the proceedings and potentially affected the outcome of the litigation, and it merits reversal and remand. Our argument will focus on four central points. First, Plaintiff Chuck Pruitt filed an untimely and improper and thus waived objection in the midst of trial asserting pleading defects in which denied Asphalt Zipper its statutory right to replead. Second, even if the objection had been proper and not waived, each of Pruitt's objections that Falls County Department was not an entity or was immune failed. Third, there was sufficient evidence that Falls County Department's responsibility for the claimant's injury or damage was sufficient and therefore should have been submitted. And fourth, the failure to submit that responsible third party was harmful. Further, concerning our arguments that there should be reversal and rendition based on the lack of legally sufficient evidentiary basis for the liability claims, we will rely on our briefs for those rendition arguments and focus on this responsible third party argument. First, in order to appreciate how plaintiff's procedural gamesmanship and the resulting lack of submission improperly skewed the trial results, it's necessary to appreciate the third party. Asphalt Zipper manufactured the water system component that was at issue in the case. It was delivered to its customer, Falls County Road and Bridge Department, which was the designated responsible third party, timely designated, months before trial. Delivered this in an undamaged condition. The department was plaintiff Mr. Pruitt's employer. It arrived in packaging and undamaged as stated. And while under its control, the component becomes damaged and is not repaired and falls on Mr. Pruitt, injuring him. Now one of Asphalt Zipper's primary defensive liability arguments was that Falls County Department, which as stated was already designated as RTP, caused or contributed to causing Mr. Pruitt's injury. There was much evidence of this in various capacities before the court. First, there was evidence that the component system arrived, as I said, undamaged and became damaged while under its possession and control. The legs were no longer vertical. They had a proclivity to go underneath, tuck underneath the unit. And this led to evidence in the record, the proclivity to fall over, which indeed did happen and injured Mr. Pruitt. When was that condition, that default, recognized? I'm sorry, Your Honor. When was it recognized that the legs, there's something wrong with the legs, that they were not in the same condition as when delivered? Yes, Your Honor. At various points during the trial, and I'm glad to get the record references if the court would like upon my rebuttal when I return, but various experts from both sides testified to the fact that in manufactured and delivered condition, it was delivered in an undamaged state. And in addition, there were numerous, there was numerous testimony that it became damaged while it was under the control and possession. This was . . . But when? The day of the accident? Or any testimony before that, that there was damage? Yes, Your Honor. There was quite a bit of testimony with respect to the fact that over time that there had been, over time there had been an elongation in the holes that held the legs, and in particular there was damage that, excuse me, evidence of damage that a force had been applied. There was, I believe it's called mushrooming. My problem, counsel, is that sounds like evidence of the condition of it. And, you know, my concern would be evidence that someone did some damage to it after it was delivered. What was that evidence? Yes, Your Honor. So there was evidence that there had been a force applied to the unit while it was under, excuse me, force applied to the unit after it had arrived at the department. They were the only ones in control of this. There was mushrooming on the unit which showed that there was an excessive force which was misused. And I would say also, if I could answer both questions with respect to the fact of the, as you're saying, the condition and if somebody had done something with the unit, another part of this is the fact that this was under the possession and control of the employer of Mr. Pruitt. And therefore, even as this became damaged, and it was an obvious damage, that not only was there the misuse that occurred, but the fact that there was damaged equipment on their property that they, as their employer, had the responsibility to repair. That also was in various evidence that was before the court. So you have both of these aspects of the responsibility of the responsible third party, Falls County Department. Not just the fact that improper use occurred, but it was under their possession and control. They had a duty to have a safe premises for their employees and they were in control of a safe premises for those on their property. So how much time elapsed from the time you're saying that they noticed this damaged condition and the accident? The exact time, actually the, excuse me, Your Honor, so the time that they had the unit was, if I remember correctly, about 10 months. As far as the exact time that they noticed, well that was the allegation. They, of course, would not state that they noticed the condition, but the evidence showed that it became damaged and it was a type of damage that they should have noticed and repaired and did not do so. And it ended up falling over while it was there and in that damaged condition. But again, it arrived there packaged wholly and there was numerous testimony that as manufactured and as delivered, the legs were vertical, there was nothing wrong with the unit at that time. And again, so there are these two types of evidence that was before the court. But the fact that it should have been repaired, it was damaged by someone and there it was and likely had the legs tucked under it before it fell over. It was there for about two weeks before it fell over in that same place. And then secondly, the fact of improper use. So there was sufficient evidence and as you know, this evidence just needs to be more than a scintilla that something occurred that was under the control and that would be under the responsibility and deemed them contributing to the harm that Mr. Pruitt suffered. And yet the jury was not allowed to bring this into consideration. After the first day of a three-day trial, Mr. Pruitt filed an objection. And this was not based on any sort of evidence that came into the trial during that first day of trial or indeed anything having to do with the sufficiency of the evidence, but rather asserted pleading defects which were assertable from the time that the motion for leave to designate the responsible third party was filed three months prior. These were allegations that the responsible third party was immune and or was not an entity. Now it was error to not submit the responsible third party in the jury charge and we would argue that the only two arguments that were properly before the court was whether there was sufficient evidence, indeed the court's questions this morning, whether there was sufficient evidence of the responsible third party causing or contributing to cause the harm to Mr. Pruitt. And then secondly, whether it was harmful error to not submit that responsible third party. The other objections that were put forth, whether the department was an entity or immune, were simply waived. Now, as the court knows, the responsible third party statute broadly defines what a responsible third party, who can qualify for this, and this was purposefully done by the Texas legislature. It defines a responsible third party as any person who is alleged to have caused or done harm or damages as such. And courts have applied this in ways so, and it's consistently done, so that the statute's purpose is to hold each party responsible only for the party's own conduct causing injury. Section 33.004, which governs the responsible third party regime, the whole process of designating and then submitting the third party, makes very clear that the legislature, the Texas legislature crafted this so that you have a balancing of interest between the plaintiff and the defendant, and you also have very definite things that happen at different parts of that submission process. You have the designation process. Once it's designated, you have the submission process. The designation process involves various objections, which I'll get to in a minute. You have various things that need to be passed over. But once it's designated, the only way that it cannot be submitted is if there's not sufficient evidence before the court to submit the responsible third party in the jury charge. That's under subsection L of that section. Now, the two subsections that are particularly at issue here are subsections F and G, and these provide that when a party files a motion for leave to designate the responsible third party, a person, once they are served with that motion for leave, they have fifteen days to object to any facts. If they say that the defendant has not pled sufficient facts regarding that responsible third party, they have fifteen days to object. How does everyone assume that those deadlines from the state law apply in a federal court? District courts are divided, right, on whether those deadlines apply in federal court? Well, the district courts are . . . there is some division, Your Honor, with respect to the subsection D and the disclosure requirements. And that was briefed in both of our briefings. There was a Withers case that's brought up, and then there's some other cases on the other side, which state that with respect to disclosure, whether this . . . actually, and I can get to that more fully if you'd like, Your Honor, the timeliness argument, but this has to do with if the statute of limitations has run on the substantive defense against the responsible third party, then if the other party has not . . . excuse me, the designating party has not disclosed timely whether those disclosure requirements apply in federal court. But with respect to the responsible third party as a statute as a whole, that has been applied consistently in the federal courts, including, for example, this fifteen-day period. But a district judge couldn't say, oh, these deadlines push it too close to trial. I don't want these designations made after discovery. I want to set earlier deadlines. You're saying a district judge couldn't do that? Well, as the courts have applied the responsible third party statute, the sixty-day limit so that it has to be designated sixty days before trial has been applied consistently. I don't know of an exception to that. And so, getting too close to trial has not been an issue. However, as we said, mainly it's the disclosures that's been a split. So, under subsections F and G, you do have this requirement to go ahead and object. And if they do not do so, we have under the Flack decision that it is a waived objection if they don't do so. Significantly for purposes here, subsection DG provides that the designating party . . . Let me ask you this. Yes, Your Honor. With regard to this responsible third party, it sounds like throughout the course of the trial, all the evidence that Asphalt had that this other entity was responsible, all that evidence was presented to the jury. Is that right? I mean, all of this . . . what you told me about how it was damaged, it was misused, all of that, the jury heard all of that. Yes, Your Honor. I would think so. Now, I will say that after this objection was filed, and I'm remembering the timeliness of it, in the middle of the third day of trial, the court let us know that he was not going to submit the responsible third party. And if my memory serves, the evidence after that time was not related to the responsible third party. So, I believe you're right, Your Honor. Now, I will say that it did affect our closing, of course. If you look at the opening versus the closing, it was different in focus because we knew that the responsible third party was not going to be submitted. Well, and I understand that. Yes, sir. But the closing is not evidence. Of course. Because what I'm getting at is, if the jury had heard the evidence that someone other than Asphalt was responsible, they still would have been free to make a determination that Asphalt was not lying, even without this responsible third party designation that Texas elapsed. Is that right? I respectfully disagree, Your Honor, in the sense that the responsible third party statute is meant for, it's meant as an allocation of responsibility among many parties. And therefore, even if they concluded that Asphalt Zipper was in some part responsible, now understanding that on the jury charge they only had responsible third, or excuse me, they only had Asphalt Zipper and the plaintiff, and they went wholly with Asphalt Zipper. I understand that. I don't minimize the importance of a jury charge and what a jury charge is because they read it and they want to follow it. So if it's not there, then they don't get to fill in that line that says this responsible third party bears this proportion of responsibility. But in terms of a . . . I guess what I'm saying is if they determined that Asphalt was not responsible, then that would have been a verdict for Asphalt. Actually, Your Honor is right on a very central point, and that is the point that under Texas law, the Texas legislature has been very specific on the opportunity for the parties to make sure that the responsibility can be allocated among those who are specifically responsible. So let's say hypothetically that the jury would be thinking that the responsible third party was responsible for a certain percentage. They were given no opportunity to state as such. All they were asked was, was Asphalt Zipper at fault? And they said yes. But we don't know whether they would have said, you know what, this responsible third party was also at fault. And we don't know if that would have been over 50 percent based on the evidence that was put before them. And so that is why what's happened here, and you're right in the center of the importance of this, is that there was no opportunity given to be able to allocate that responsibility as the Texas legislature has required. Thank you, counsel. Your time has expired. Thank you, Your Honor. All right. Appellee. You may proceed. I please the court, my name is Greg White and I represent Chuck Pruitt and his estate. Mr. Pruitt regrettably took his own life after the judgment in this case. Let me start by answering some of the questions that the court has already put forward. Judge Clement, you asked what evidence was there of when the damage might have occurred. And I have to give you some warning here that the briefs, I think, helpfully provided the court with some photographs of what this machine looked like. But all of the photographs where you see the leg, you know, bent and in the wrong position are post-accident photographs. So there are no photographs of what the machine looked like before the accident. So if the impression was that the leg was in the wrong place in the picture here, that's not evidence that that's what it looked like beforehand. And Judge Costa, you asked this question about the deadlines and how they might work. I've got to tell you, there's no federal case that says do we use the federal deadlines or do we have to follow the state statute. We don't know whether that's substance so that we have to or is it procedure. Oddly enough, it seems so procedural that it has to be subject to modification by a federal court. But we don't contend here that the federal judge tried to modify it. I think that what might not be so familiar to this court about Chapter 33 is a constant companion to all tort cases in Texas. And so because the lawyers and some Texas judges are so very familiar with it, they don't bother with trying to modify deadlines there unless it really affects the trial. So we don't have a case that says federal or state. And then Judge Graves, you asked about the idea that the jury actually had an opportunity to consider the argument that someone else was at fault here. And I'll point you to the jury charge here. And I just think there's a couple of paragraphs in there. It's the record at 5112. A specific instruction is given to the jury three times that says a product is not defective, not unreasonably dangerous if sold, when the dangerous condition that caused the accident is caused by a substantial change or alteration of the product after it's sold. So the conduct of some other person damaging the product was presented to the jury three times in three questions in three specific instructions. And the argument that was made by both sides considered that. So the idea that Asphalt Zipper did not get a chance to place the blame somewhere else I think is a little disingenuous. I know that in Texas we like to be able to say that there's an empty chair here and we want to point the finger at the empty chair and that Chapter 33 gives us a full opportunity to do that, sanctioned by the legislature. But what we see here in reality is that they had every chance to do exactly that and the jury rejected that. I'll tell you why they rejected it. Because the evidence that they put on about how the damage to this machine could have occurred is best summarized by the evidence of their expert, Mr. Harrelson. He's a design expert. And this was asked, and I'm quoting this but it's very short, what is your opinion, Mr. Defense Expert, on what could have caused the damage to this product? His answer was, I would guess it got drugged somehow with the legs attached. The question was, we don't know. And he says, I don't know how, I'm just guessing. And every expert that tried to opine about how these legs could have been, you know, gotten out of whack in some way said, I'm guessing about how it might have happened. So there's actually not evidence in the record about how this damage occurred. It is clear that there was damage, that the jack, and instead of trying to look at the machine, think about your boat trailer or your horse trailer, the jack that's in the front, you crank it to the right place and then you lock it with a pin. That's a circular pin. And if you move the trailer back and forth, then that circle that the pin went into is going to get wider. And at some point, if you have a heavy enough load on the trailer, that leg is going to move enough so that the center of gravity is going to make that jump over. So there was plenty of evidence that that circle had gotten wider. But nobody said it was by damage, and everybody allowed that it could have been normal wear and tear. And also everybody allowed, no witness contested this, that Asphalt Zipper never warned anyone to be careful when you bump into it or put a load on it, that it could in fact damage that circular hole where the pin went enough to make the base of that machine unstable. So what we have here is not really evidence that somebody else damaged this product, but we have somebody saying that it could have happened. And this court is well familiar, and we start off with Sanderson plumbing case that went to the Supreme Court, that you can reject a defense argument if it's an argument that is unworthy of credibility. And so a guess or speculation about how the damage might have occurred is not evidence that somebody did something. And we cite two Chevron cases in our brief that says that the court will not encourage a jury to engage in speculation when setting fault. Let me ask you, sir, if there was a designation on the verdict form requesting a percentage of liability. There was not. If there was, that percentage against Falls County would not be recoverable, right, because that's applying to the lawyer. That's the way Chapter 33 works. And like I said, it's a constant companion to Texas lawyers who do tort cases. But the way that the statute works is that the defense is able to name this responsible third party and to argue that the jury should assess a percentage against that responsible third party. So if the jury said, well, we think that responsible third party was guilty of 30% fault, then a $100,000 verdict would now be reduced to $70,000. The $30,000 recovered by no one. And so there are some things that go with Chapter 33 that are worth knowing and putting in context here. First of all, in Chapter 33, the defendant who wants to name the empty chair becomes a plaintiff, has to make pleadings as to what that responsible third party did. Now, when we talk about the motion to designate, that's the name under state procedure, that's the pleading of the defendant against that responsible third party. And the plaintiff who doesn't want that empty chair over there is entitled to object to it. So we would look in federal procedure, Rule 12, motion dismissed, motion for more definite statement. But once those pleadings are set, federal or state, we have settled what the pleadings ought to be. We have not said that you are entitled to submit it, that you are invariably and unerringly entitled to a submission. There are other parts to this, and Texas procedure calls it the motion to strike. So a plaintiff who doesn't want the empty chair can say, strike that defendant, there is no evidence that that defendant has any responsibility, which Pruitt's side did. It's in the record at 3021. That motion to strike was carried by Judge Albright until the trial, no ruling. The last thing that is permitted is that the responsible third party statute says nobody can be submitted if there is not sufficient evidence to support fault or responsibility on their part. And that was certainly the argument we made to Judge Albright that all this was guess and speculation, you shouldn't submit it. So this is not a pleading problem. The gamesmanship that's being argued here is about pleading. We're not complaining about the pleading. We didn't do anything wrong with the pleading. The pleading was perfectly satisfactory with us. What our problem was was the substance of what was being said. I thought you said they named the wrong entity. Exactly. And that is, that goes to this statutory canon that every court considers, and that is that a remedy that is defined by a legislature, not included in the common law or by constitutional rights, the statute is mandatory and exclusive. The Texas Supreme Court just said that in another context last year. This court says it all the time in Title VII cases. You've got to comply with the statute if you want that remedy because it's a statutory creation. And the U.S. Supreme Court says the same thing. And there's a Morton Salt case that says that, which I can get if the court needs that. So strict compliance is required. Here, the naming that they did, the designation was Falls County Road and Bridge Department. That's not an entity, any more than the Maintenance Department at the Court of Appeals is an entity. It's a department. The reason it sounds like it might be an entity is because in Texas, road and bridge finances and budgets are controlled by the Commissioner's Court. That's the way the Constitution set it up. And each commissioner is given a road and bridge budget for his district. And he can spend it, he or she can spend it on however they want to spend it on roads and bridges there. But the Transportation Code gives the option to each county to vote to redirect those budgets to the whole court. So instead of one commissioner saying, I want to fix that bridge on Highway 2221, the whole court votes on what to fix the bridge on 2221, considering all of the money we have available for that. Falls County elected to do that. And so they set up a department which only redirected finances and operation from commissioner single to commissioner's court whole. That makes no new entity under the code or any other certain thing. And when the designation included the wrong name, we come up with, well, is that a misnomer or a misidentification? Now, if you wanted to go back to pleading problems, let me encourage the court to read the discussion among the lawyers and the judge when this issue came up at trial. It begins at the record 8193. And the judge is asking, and it's kind of a long discussion, but fair enough. The judge is asking, well, can I change the name here? Am I authorized to do this? Clearly an invitation to the defense, to ask false effort. You'll want me to submit Falls County. They never asked the judge to submit Falls County, the true name. All they said was you can do either one. It doesn't matter. The two are the same. But all they had to do was to make a firm request. Well, if you think the name is wrong, judge, then submit Falls County. No request like that was ever made. So if there is a problem here that somebody didn't get a chance to put somebody on the jury charge the way they wanted it to, it was the insistence of asphalt zipper that they wanted to name road and bridge department and not Falls County when they had the opportunity to do it. They never asked for it. Now, let me go on to one other thing that has to do with whether Falls County's responsibility could legally be submitted. It involves a recent Texas Supreme Court case. The statute, Chapter 33, and in all fairness, counsel has absolutely correctly quoted it. A third party, a responsible third party can be a person alleged to cause or contribute in any way to the harm that the plaintiff is complaining of. But there's the rest of the sentence. The harm in any way, whether by negligent act or omission or by activity or conduct that violates an applicable legal standard. So it's not just that you get to name anybody you want and charge them with fault or responsibility. Their fault or responsibility is still measured by an applicable legal standard. A governmental entity in Texas has a distinct legal standard from the ordinary citizen on the street. We know that. We cited this case, and I'm going to spend a little time on the case McKnight. McKnight is a common intersection collision. Somebody ran a stop sign. And when the defendant was sued for running the stop sign, he said, I couldn't see it because there was a tree hanging in front of it. And he said, the city of Houston is responsible for trimming trees so you can see a stop sign. When the McKnight court examined that, they said, well, let's look and see what their responsibility actually is. And the responsibility was limited to trees that were hanging and blocking stop signs when they knew that they were there and had not fixed it within a reasonable time. Now, understandably, the evidence in McKnight was that the city of Houston indeed knew that that tree was hanging there and had never trimmed it like they should within a reasonable time. So in McKnight, they submitted the responsibility to the city of Houston. In March of this year, the Texas Supreme Court decided N. Ray Eagle Ridge. And Eagle Ridge was an oil and gas kind of dispute where we have people that are operating an oil and gas field. And one of the co-operators named Aruba had put in a pipeline. Ultimately, this pipeline was going to rupture. You can see there wouldn't be a lawsuit without some kind of tragedy like that. And in any event, Aruba installed the pipeline, and then Aruba sold their interest to Eagle Ridge. When the rupture occurred thereafter, a plaintiff wanted to sue Eagle Ridge. Eagle Ridge said, why me? I didn't put the pipeline in. Aruba put the pipeline in. And they tried to name Aruba as a responsible third party. When the trial court wouldn't let them do that, the Supreme Court was asked to issue a mandamus on this Chapter 33 designation of a responsible third party. And when the Texas Supreme Court considered that, they said, well, what is the responsibility of a prior owner as to the rupture? And the Supreme Court said prior owners, which is what the law is in Texas, have no responsibility after they have conveyed it. Therefore, even though Aruba put the pipeline in, since they conveyed it to Eagle Ridge, Eagle Ridge was responsible for the pipeline, not the prior owner, and the Texas Supreme Court says you cannot designate Aruba. You must consider the responsibility of this new empty chair in the context of what legal duty that responsible third party would ever have. And in this case, Falls County would have a legal responsibility that is bordered by the Texas Tort Claims Act. The Texas Tort Claims Act says that governmental entities only have negligent responsibility when there is use of tangible personal property or condition of tangible personal property that leads to injury. This machine was not in use. It was standing. And so there's no responsibility under the use part of the Court Claims Act. The condition of the property is only a condition where safety parts are missing. And that's Texas Supreme Court cases. Lowe v. Texas Tech is the leading one on that. And it says, and all of the parties agree, that the asphalt zipper machine was not missing any required safety equipment. Therefore, they could not have prevailed on a claim that the governmental entity had responsibility under the applicable legal standards for the tipping over of the machine. Couldn't do it. And so whether you want to talk about whether people designated properly or what time, when we get to the end and we say, well, if you want to submit this, did you provide evidence that there was any fault on the part of Falls County, and did you provide a legal standard applicable that Falls County breached, the answer to both is no. And so the court correctly did not submit it, whether it was for the failure to name them correctly, which seems like a very technical point, the lack of evidence that that third party did anything wrong that caused the injury in any way, or the legal responsibility under the applicable legal standards by the responsible third party, who happened to be a governmental entity. Asphalt zipper fails on all those points. And Judge Albright was correct to refuse to submit that at all. I will say that that is saved by the fact that Asphalt Zipper had every opportunity to argue to the jury that the reason that the legs and the hole in the pin was wrong was that somebody else did it. And there was a vehicle in the court's charge for the jury to accept that argument, and they rejected it. But the problem is if they think both parties were at fault then there would be an apportionment. There could be, but that apportionment only occurs, Judge Costa and I am referring back to what I've already said, but you've got to name the right party. Strict, mandatory, exclusive compliance with the statute. You've got to provide evidence of it, not a guess or a supposition or a, you know, I think. Those won't work. And you have to do that evidence related to the right legal standard, which they couldn't meet. So yes, I think that what they want is to be able to blame somebody and get that apportionment. But you don't get that just because you think that that's the right moral thing to do. You have to follow the Texas statute to do that, and they failed every chance they had. Notably the chance to change the name, which Judge Allwright offered to them, and they wouldn't take it. So unless the court has other questions about me, I'll yield the remaining 30 seconds. We'll take it. Thank you very much. Yes, sir. Your Honors, with respect to you, I first want to address the fact of the questions regarding the evidence in the record with respect to the fault or the contributing fault of the responsible third party. I'm glad to go into it in detail, but it is found on pages 39, pages of this laid out, 39 through 46 of our brief, all those categories that I've discussed before. With respect to the appellee's assertions that as far as our request for the responsible third party Falls County Department to be submitted, at footnote 2 on page 14 of our brief, it goes through many, many times that we requested consistently that they be submitted. That particular discussion that came forth regarding the submission that he referred to happened after this surprise objection came before the court, and we were presenting various case law to the court and various arguments as to why he should go ahead and submit this responsible third party. And the court will see that in the jury charge, my objections were that this was not submitted, so the department itself, that is who we wanted submitted, and that's without question. Now, with respect to the argument as far as the duty that's owed, this was not brought up below. This is a new argument on appeal, that there is some duty that is involved. So that's our first point with respect to that. The second is in the Eagle Ridge case that he refers to, yes, that was decided by the Supreme Court. We looked at that closely, and it is obvious not from the opinion but from the briefing beneath it. The court refers to the fact it did not specifically decide two issues. One of those was whether a duty is specifically required under the responsible third party statute. So that was not decided by that case. But nevertheless, going forth with the duty argument, if we even consider it, since it's not before the court, it wasn't raised below, there are these additional points, and that is that even if a duty is required, there is a duty here by this responsible third party as the employer and as the person who is in control of this property to keep it safe and to keep this premises safe and the equipment safe to his employer. And this whole conception that the Tort Claims Act forms the applicable duty or is at issue here, well, that's simply not the case. For example, in Fort Bend County, which we cite in our brief, the governmental liability under the Tort Claims Act does not create new duties. The Tort Claims Act does not. It only waives governmental immunity in circumstances where a private person similarly situated would be liable. So that's not the standard here. We are looking at the substantive law as to whether there's a duty, and therefore all these conceptions of whether there is a notice under the Tort Claims Act, whether there was use of the property, the condition of the property, all those things that happen under the Tort Claims Act, that's simply not at issue. The Texas legislature and courts after that have specifically held that the immunity of a party does not affect designation, and that occurs more broadly with respect to these concepts that Apelli is trying to bring in. Now, with respect to the conception that the jury charge brought up this whole issue that there had been some damage and that they could consider that, yes, there was a substantial change in alteration instruction in the jury charge with respect to the liability questions. However, it's very clear that those particular instructions do not cover the same ground as the responsible third party instruction. And the reason is, first of all, to begin with, there's no exception under Texas law that allows a court not to submit the responsible third party just because a jury charge in some way indirectly refers to the fact that something occurred or that there might have been another actor. The substantial—and the Supreme Court, Texas Supreme Court, has been very, very specific that courts are not to make additional exceptions to the Tort Claims Act that are not in it because the legislature already put specific exceptions in there. And secondly, it doesn't cover the same theory. The substantial change in alteration instruction only means that the unreasonable condition of the property occurred because of the substantial change. It's the sole cause, and therefore that would let the defendant totally off. What the responsible third party instruction deals with is a contributing cause. So even if the jury found that there was no substantial change in the—excuse me, that that did not apply, that it was not the sole cause, still that is not equating to the responsible third party instruction, which is where you have a contributing cause or a contributing factor that played a part in bringing about the plaintiff's alleged harm. And therefore, it doesn't cover the same territory. With respect to this being a pleading defect, it is indeed a pleading defect that they have—that they've put forth. And we've cited this on pages 7 and 8 of our response brief. Numerous cases that state that these types of allegations that a party is not—or excuse me, that a party is not a proper party because it's not an entity or because it's immune. Well, those are— Your Honor. Yes. Your time has expired. I'll give you a moment to conclude. Your Honor, thank you. And we ask that the court please reverse and remand or reverse and render. Thank you. Thank you. We'll take this matter under advisement.